BROWNSTEIN HYATT FARBER SCHRECK, LLP
Kirk B. Lenhard, Esq., Nevada Bar No. 1437
klenhard@bhfs.com
Jeffrey S. Rugg, Esq., Nevada Bar No. 10978
jrugg@bhfs.com
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone:  (702) 382-2101
Facsimile:  (702) 382-8135

STRADLING YOCCA CARLSON & RAUTH, P.C.
John F. Cannon, Esq. (admitted *pro hac vice*)
Jason de Bretteville, Esq. (admitted *pro hac vice*)
Aaron C. Humes, Esq. (admitted *pro hac vice*)
660 Newport Center Drive Suite 1600
Newport Beach, CA 92660
Telephone:  (949) 725-4000
Facsimile:  (949) 725-4100

*Attorneys for Defendants*
*SPECTRUM PHARMACEUTICALS, INC.,*
*RAJESH C. SHROTRIYA,*
*JOSEPH KENNETH KELLER, and*
*BRETT L. SCOTT*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

|  |  |
|---|---|
| In Re:<br><br>SPECTRUM PHARMACEUTICALS, INC.,<br>SECURITIES LITIGATION | ) CASE NO. 2:13-cv-00433-LDG-CWH<br>) Base File<br>)<br>)<br>) **DEFENDANTS' MOTION FOR**<br>) **RECONSIDERATION OF THE**<br>) **COURT'S MARCH 26, 2015 ORDER;**<br>) **MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES IN SUPPORT**<br>) **THEREOF**<br>)<br>)<br>) **ORAL ARGUMENT REQUESTED** |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2      PLEASE TAKE NOTICE THAT, pursuant to the Court's inherent authority to

3  reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient at any

4  time prior to final judgment, Defendants Spectrum Pharmaceuticals, Inc., Rajesh C. Shrotriya,

5  Joseph Kenneth Keller, and Brett L. Scott (collectively, "Defendants") respectfully request that

6  the Court reconsider its March 26, 2015 Order (the "Order")[1] denying Defendants' Motion to

7  Dismiss the Consolidated Amended Class Action Complaint (the "Complaint") and that the

8  Court, upon reconsideration, dismiss the Complaint with prejudice.

9      Reconsideration is warranted because the Court's Order contains clear errors of law and

10  fact that strongly support reversing the Order.  Specifically, the Order (1) wrongly applies Rule 8

11  instead of Rule 9 in evaluating the Complaint's allegations; (2) treats conclusory assertions of a

12  decline in end-user demand as equivalent to an allegation of *facts* constituting a material decline

13  in end-user demand; (3) misapplies the core operations inference and Ninth Circuit law on stock

14  sales to find the Complaint adequately alleges scienter; (4) does not apply the correct legal

15  standards to the Complaint's loss causation allegations; (5) misapplies the Reform Act's safe

16  harbor provision so as not to protect Defendants' forward-looking statements; and (6) does not

17  consider that Defendants' statements are inactionable puffery.  Leaving the Order in place would

18  be manifestly unjust to Defendants.

19  ///

20  ///

21  ///

22

23

24

25

26  _____

27  [1] The Order was signed on March 26, 2015, but it was entered and served on the parties
electronically via the CM/ECF system on March 27, 2015.  (See Dkt. No. 117 (the docket text
says: "Entered:  03/27/2015").)

28

013739\0002\12117945.1

1    This motion is based on the accompanying Memorandum of Points and Authorities, all

2    pleadings and papers filed in this action, and such additional papers and arguments as may be

3    presented at or in connection with oral argument of counsel.

4

5    DATED: April 10, 2015                    BROWNSTEIN HYATT FARBER
                                              SCHRECK, LLP
6

7
                                             By: /s/ Jeffrey S. Rugg
8                                                Kirk B. Lenhard (Nevada Bar No. 1437)
                                                 Jeffrey S. Rugg (Nevada Bar No. 10978)
9                                                100 North City Parkway, Suite 1600
                                                 Las Vegas, NV 89106-4614
10                                               Telephone:  (702) 382-2101
                                                 Facsimile:  (702) 382-8135
11

12                                               STRADLING YOCCA CARLSON &
                                                 RAUTH, P.C.
13                                               John F. Cannon (admitted *pro hac vice*)
                                                 Jason de Bretteville (admitted *pro hac vice*)
14                                               Aaron C. Humes (admitted *pro hac vice*)
                                                 660 Newport Center Drive Suite 1600
15                                               Newport Beach, CA 92660
                                                 Telephone:  (949) 725-4000
16                                               Facsimile:  (949) 725-4100

17
                                             *Attorneys for Defendants*
18                                           *SPECTRUM PHARMACEUTICALS, INC.,*
                                             *RAJESH C. SHROTRIYA, JOSEPH KENNETH*
19                                           *KELLER, and BRETT L. SCOTT*

20

21

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

013739\0002\12117945.1

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     THE MARCH 26, 2015 ORDER ........................................................ 3

III.    ARGUMENT ....................................................................................... 4

        A.    Standard Of Review ................................................................. 4

        B.    The Order Wrongly Applies Rule 8 Instead Of Rule 9 .................................... 5

        C.    The Order Assumes That The Complaint Adequately Alleges A
              Material Decline In End-User Demand ............................................ 7

        D.    The Order Misapplies The Core Operations Inference And Ninth
              Circuit Law On Stock Sales To Find The Complaint Adequately
              Alleges Scienter. ...................................................................... 9

        E.    The Order Does Not Apply The Correct Legal Standards To The
              Complaint's Loss Causation Allegations ........................................ 12

        F.    The Order Misapplies The Reform Act's Safe Harbor Provision So
              As Not To Protect Defendants' Forward-Looking Statements ...................... 15

        G.    The Order Does Not Consider That Defendants' Statements Are
              Inactionable Puffery ................................................................ 16

IV.     CONCLUSION ................................................................................. 17

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

i

# TABLE OF AUTHORITIES

Page(s)

# CASES

*Allstate Ins. Co. v. Herron*,
   634 F.3d 1101 (9th Cir. 2011).................................................................................................. 5

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004)..................................................................................................... 9

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
   254 F.3d 882 (9th Cir. 2001).................................................................................................... 5

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
   880 F. Supp. 2d 1045 (N.D. Cal. 2012) ................................................................................. 13

*CM Capital Servs., LLC v. Stewart Title of Nev.*,
   No. 2:10-Cv-317 JCM (LRL), 2010 U.S. Dist. LEXIS 1180011 (D. Nev. Nov. 5,
   2010) ......................................................................................................................................... 5

*Depasquale v. Nevada*,
   No. 3:11-cv-00191-LRH (WGC),
   2012 U.S. Dist. LEXIS 118655 (D. Nev. Aug. 22, 2012)........................................................ 5

*Glazer Capital Mgmt., LP v. Magistri*,
   549 F.3d 736 (9th Cir. 2008).................................................................................................. 13

*In re Bus. Objects S.A. Sec. Litig.*,
   No. C 04-2401 MJJ, 2005 U.S. Dist. LEXIS 20215 (N.D. Cal. July 27, 2005) ...................... 9

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010)................................................................................................ 10

*In re Downey Sec. Litig.*,
   No. CV 08-3261-JFW (RZx), 2009 U.S. Dist. LEXIS 25007 (C.D. Cal. Mar. 18, 2009)...... 11

*In re ECOtality, Inc. Sec. Litig.*,
   No 13-03791-SC, 2014 U.S. Dist. LEXIS 130499 (N.D. Cal. Sep. 16, 2014) ....................... 10

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
   554 F. Supp. 2d 1083 (C.D. Cal. 2008)................................................................................... 10

*In re Leapfrog Enters, Inc. Sec. Litig.*,
   527 F. Supp. 2d 1033 (N.D. Cal. 2007) .................................................................................. 11

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014)................................................................................................ 14

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) ............................................................................... 16

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ................................................................................. 8

*In re Silicon Graphics, Inc. Sec. Litig.*,
    970 F. Supp. 746 (N.D. Cal. 1997) ...................................................................... 13

*In re Splash Tech. Holdings, Inc., Sec. Litig.*,
    160 F. Supp. 2d 1059 (N.D. Cal. 2001) ......................................................... 11, 13

*In re Thornburg Mort., Inc. Sec. Litig.*,
    No. CIV 07-0815 JB/WDS, 2010 U.S. Dist. LEXIS 71295 (D.N.M. July 1, 2010) ............... 7

*In re Tibco Software Sec. Litig.*,
    No. C 05-2146 SBA, 2006 U.S. Dist. LEXIS 36666 (N.D. Cal. May 25, 2006) ..................... 9

*In re VeriFone Sec. Litig.*,
    784 F. Supp. 1471 (N.D. Cal. 1992) ..................................................................... 10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................................ 7

*Loos v. Immersion Corp.*,
    No. 12-15100, 2014 U.S. App. LEXIS 17813 (9th Cir. Sep. 11, 2014) ........................... 14-15

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ........................................................................... 13-15

*In re MGM Mirage Sec. Litig.*,
    No. 2:09-cv-01558-GMN-VCF, 2012 U.S. Dist. LEXIS 85862 (D. Nev. June 21, 2012) ............... 6

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
    380 F.3d 1226 (9th Cir. 2004) .............................................................................. 12

*Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*,
    774 F.3d 598 (9th Cir. 2014) .................................................................. 1, 5-6, 13-14

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) .............................................................................. 12

*Powers v. Eichen*,
    961 F. Supp. 233 (S.D. Cal 1997) .......................................................................... 6

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014) ................................................................................ 12

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

iii

*Ronconi v. Larkin,*
253 F.3d 423 (9th Cir. 2001) ........................................................................... 8

*SG Cowen Sec. Corp. v. U.S. Dist. Ct.,*
189 F.3d 909 (9th Cir. 1999) ........................................................................... 7

*South Ferry LP v. Killinger,*
542 F.3d 776 (9th Cir. 2008) ...................................................................... 11-12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007) ...................................................................................... 14

## FEDERAL RULES

Fed. R. Civ. P. 9 ................................................................................... *passim*

## OTHER AUTHORITIES

Hillary A. Sale, *Heightened Pleading and Discovery Stays: An Analysis of the Effect of the PSLRA's Internal Information Standard on '33 and '34 Act Claims,*
76 Wash. U. L.Q. 537, 582 (1998) .................................................................... 7

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

iv

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants Spectrum Pharmaceuticals, Inc., Rajesh C. Shrotriya, Joseph Kenneth Keller, and Brett L. Scott (collectively, "Defendants") respectfully request that the Court reconsider its March 26, 2015 Order (the "Order") denying Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint (the "Complaint").  Reconsideration is warranted because the Order is based on clear errors of law and fact.

*First*, the Order states that Defendants' Motion to Dismiss "is governed by the relaxed requirement of Rule 8(a)(2) that the complaint need contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  (Order 1-2.)[2] However, the Ninth Circuit's recent ruling in *Oregon Public Employees Retirement Fund v. Apollo Group., Incorporated,* 774 F.3d 598 (9th Cir. 2014), makes clear that the heightened particularity requirements of Rule 9, not Rule 8, apply to *each* of the elements of a Section 10(b) securities fraud claim, such as the claims in this case.  While the Order makes reference to the Reform Act and Rule 9, the Order does not apply them to scrutinize the Complaint's conclusory allegations as required by the Ninth Circuit.

*Second*, the Order treats conclusory allegations as if they were supported by particularized facts.  Critically, the Complaint fails to provide factual allegations describing a decline in end-user demand of sufficient magnitude to render the Defendants' truthful statements regarding Fusilev's performance misleading.  The Complaint simply does not allege any facts regarding the amount, duration, or timing of any such decline, let alone facts constituting a decline of sufficient scope to render Defendants' literally true statements misleading.  The Complaint instead relies solely on conclusory allegations that do not state the percentage or volume of any decline, when any decline occurred, how long any decline

---

[2] Unless otherwise indicated, page number citations refer to each document's internal pagination, not PACER-generated page numbers.  Citations herein to "Mot." and "Reply" refer to Defendants' Motion to Dismiss (Dkt. No. 108) and Defendants' Reply brief in support thereof (Dkt. No. 115), respectively.

lasted, or what geographic or market segments were effected.  The Order's reliance on conclusory allegations in place of such facts constitutes a failure to enforce the requirements of Rule 9 and the Reform Act.

*Third,* the Order relies on a "core operations" inference to conclude that the Complaint adequately alleges that the Defendants knew about a material decline in end-user demand at the time of all of the alleged misstatements made throughout a more than seven month class period.  But the core operations theory provides a means of inferring knowledge of established facts, not the existence of the facts themselves, which the Complaint does not allege.  The Order also misapplies settled law regarding the inferences available from Dr. Shrotriya's alleged stock sales.  Furthermore, the Order does not evaluate scienter separately with respect to each Individual Defendant.  Finally, the Order does not adequately weigh competing, non-culpable inferences.

*Fourth*, the Order fails to apply Ninth Circuit standards for evaluating the Complaint's loss causation allegations.  The Order finds that Plaintiff adequately alleged loss causation because Spectrum's alleged stock drop "occurred subsequent to defendants' alleged conduct and misrepresentations."  This *post hoc ergo propter hoc* (after this, therefore because of this) reasoning runs afoul of Ninth Circuit law.  The question is not the mere sequence of events, but whether the Complaint adequately alleges that the stock drop was proximately caused by a revelation of the fraud alleged in the Complaint.  Here, the Complaint merely alleges that the market reacted to a timely disclosure of an *anticipated* reduction in orders, not some previously hidden fraud.

*Fifth*, the Order misapplies the Reform Act's safe harbor provision.  The Order concedes that Defendants' statements were forward-looking and accompanied by cautionary language warning of the precise risks that allegedly materialized.  Nonetheless, the Order casts aside the safe harbor on the assumption that Defendants failed to caution investors that they knew of a material decline in end-user demand.  But this is doubly wrong: (1) the Complaint does not allege any such decline and (2) Defendants' knowledge of any supposed

013739\0002\12117945.1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

decline is irrelevant to the safe harbor as a matter of law.

> *Sixth*, the Order does not address Defendants' arguments that many of the alleged misstatements were broad statements of corporate optimism protected as a matter of law under the mere puffery doctrine.

Accordingly, Defendants respectfully request that the Court reconsider its Order to correct these clear errors of law and fact and, upon reconsideration, grant Defendants' Motion to Dismiss.

## II.   THE MARCH 26, 2015 ORDER

In their Motion to Dismiss, Defendants argued that Plaintiff had not adequately alleged facts sufficient to state a claim. (Dkt. Nos. 108, 115.) On March 26, 2015, the Court denied Defendants' Motion to Dismiss after erroneously relying on the "relaxed" pleading requirements of Rule 8. (Order 1-2, 8.) The Court's Order is based on the erroneous assumption that the Complaint adequately alleges that "***end-user demand was falling***." (*Id.* at 4 (emphasis added).) Yet, the Order does not cite any paragraph in the Complaint that actually alleges how much end-user demand went down, when it went down, or how long it went down for—much less what specific data any Defendant had regarding end-user demand at the time of any alleged misstatement. (*Id. passim.*) That is because the Complaint contains no such allegations of fact. (Complaint *passim.*)

Compounding this foundational error, the Order then incorrectly finds that Plaintiff has adequately alleged that "***the defendants <u>knew</u> that end-user demand was declining in response to the increased availability of generic leucovorin***." (Order 5 (emphasis added).) As a result, the Order mistakenly holds that Defendants' forward-looking statements are not protected by the Reform Act's safe harbor because Defendants' "[c]autionary language identifying potential adverse events is not meaningful when it conflicts with or fails to reflect current adverse events known to the speaker." (*Id.* at 5-6 (emphasis added).)

As to scienter, the Order relies on the core operations theory and supposedly suspicious stock sales by Dr. Shrotriya. The Order states:

> The plaintiff has alleged facts showing the importance of Fusilev sales to

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Spectrum's business; that the defendants knew the impact of the return of generic leucovorin supplies on Fusilev end user demand was of concern to investors; *that the defendants had access to sources of information allowing them to ascertain that the Fusilev end user demand was declining as generic leucovorin became more readily available; and that the actual, and negative impact, was noticed by Spectrum employees*.

(*Id.* at 7 (emphasis added).)  The Order finds that "plaintiff has alleged facts showing that Shrotriya, in defending his assertion that end-user demand was stable, prefaced such assertion by stating "[w]hat we watch and monitor very closely is underlying end-user demand." (*Id.* (internal quotation marks omitted).)  The Order goes on to find that "*having sufficiently alleged that monitoring end-user demand would have revealed the decline of end-user demand*, the allegation permits an inference of scienter." (*Id.* (emphasis added).)  The Order also finds that Dr. Shrotriya's alleged stock sales also permit an inference of scienter (*id.*), but the Order does not address that Dr. Shrotriya's alleged sales amounted to only 12.7% of his holdings (an amount of no legal significance to scienter) or that the other Individual Defendants, Mr. Keller and Mr. Scott, are not alleged to have traded (*id. passim*).

As to loss causation, the Order contains the following two sentences of reasoning:

The loss event is clearly identified as the significant drop in stock price immediately following the defendants' March 12, 2013, announcement that Fusilev sales would drop significantly in response to the 'recent stabilization' (ie, increased availability) of the generic leucovorin market. *This event occurred subsequent to defendants' conduct and representations to mislead investors over the prior months that end-user demand for Fusilev was not and would not decline with increasing availability of generic leucovorin.*

(*Id.* at 7-8 (emphasis added).)  The Order contains no finding that the Complaint adequately alleges that the stock drop was *proximately caused by* any revelation of some supposed fraud. (*Id. passim*.)

## III.   ARGUMENT

### A.   Standard Of Review

The Court has authority to reconsider its March 26, 2015 order denying Defendants' Motion to Dismiss.  "As long as a district court has jurisdiction over the case, then it possesses

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."  *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (internal quotation marks, citation, and emphasis omitted).

In evaluating motions to reconsider interlocutory orders, the District of Nevada applies the standard for a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e).  *Depasquale v. Nevada*, No. 3:11-cv-00191-LRH (WGC), 2012 U.S. Dist. LEXIS 118655, at *3 (D. Nev. Aug. 22, 2012).  A motion to reconsider must set forth some valid reason why the court should revisit its prior order and facts or law of a strongly convincing nature in support of reversing the prior decision.  *Id.*  Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.  *CM Capital Servs., LLC v. Stewart Title of Nev.*, No. 2:10-Cv-317 JCM (LRL), 2010 U.S. Dist. LEXIS 118011, at *1-7 (D. Nev. Nov. 5, 2010) (granting motion for reconsideration where the court did not consider arguments raised in the movant's reply brief).

Here, reconsideration is warranted because the Court committed clear errors of law and fact in denying Defendant's Motion to Dismiss.  *See Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (Rule 59(e) motion "may be granted . . . to correct manifest errors of law or fact upon which the judgment rests[.]").

### B.       The Order Wrongly Applies Rule 8 Instead Of Rule 9

The Order cites the wrong legal standard for evaluating Plaintiff's allegations.  The Order states that "[i]n ruling upon this motion, the court is governed by the relaxed requirement of Rule 8(a)(2) that the complaint need contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  (Order 1-2.)  This is incorrect.  The Ninth Circuit's recent ruling in *Apollo Group* holds that Rule 9, not Rule 8, applies to *all* elements of a claim for securities fraud action under Section 10(b), even those elements not expressly governed by the Reform Act.  *Apollo Grp.*, 774 F.3d at 604-05 ("We . . . hold today

that *Rule 9(b)* applies to all elements of a securities fraud action, including loss causation.").[3] Accordingly, Rule 8's "relaxed requirement" should not have formed any basis for the Order.

While the Order later refers to the heightened pleading requirements of Rule 9 and the Reform Act, the Order does not apply Rule 9 and the Reform Act in assessing the allegations in the Complaint. Instead, the Order accepts as true all of Plaintiff's allegations, even those that are conclusory and lack the detail necessary to satisfy Rule 9 and the Reform Act. (Order 3-5.) For example, the Order does not apply Rule 9 and the Reform Act to Plaintiff's conclusory allegations of a decline in end-user demand. (Order *passim*.) Likewise, the Order does not acknowledge, analyze, and discount the Complaint's heavy reliance on conclusory, unreliable, and irrelevant statements of the CWs, none of which is alleged to have had any direct or indirect contact with any of the Individual Defendants. (Compl. *passim*; Mot. 7-8 and *passim*; Reply *passim*.) Nor does the Order address that the Complaint alleges only the existence and not the contents of internal Company documents that the Complaint relies on for support. (Compl. *passim*; Mot. 8 and *passim*; Reply *passim*.) In sum, this threshold error affects the entirety of the Order.

Failure to enforce the strict pleading requirements of Rule 9 and the PSLRA would be particularly unjust because it would open Defendants to the abusive, lawyer-driven practices Congress sought to prevent through the strict enforcement of those requirements and the accompanying discovery stay. Specifically, although the discovery stay continues to protect Defendants during the pendency of this motion for reconsideration, *see Powers v. Eichen,* 961 F. Supp. 233, 236 (S.D. Cal 1997), if the Court fails to grant reconsideration the Defendants may be wrongfully coerced into a settlement because of the prohibitive cost of discovery.

Congress coupled the mandatory stay provision with stricter pleading requirements in

---

[3] Although the *Apollo Group* decision was issued after Defendants filed their Reply brief in support of their Motion to Dismiss, Defendants submitted a Notice of Supplemental Authority to the Court on December 18, 2014 (Dkt. No. 116), two days after *Apollo Group* was issued on December 16, 2014, and approximately three months before this Court's Order on March 26, 2015.

6

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

order to prevent plaintiffs from filing weak or even meritless complaints with the intent of using the discovery process to force a coercive settlement. *See In re MGM Mirage Sec. Litig.*, No. 2:09-cv-01558-GMN-VCF, 2012 U.S. Dist. LEXIS 85862, at *7 (D. Nev. June 21, 2012); *In re Thornburg Mort., Inc. Sec. Litig.*, No. CIV 07-0815 JB/WDS, 2010 U.S. Dist. LEXIS 71295, at *19-21 (D.N.M. July 1, 2010). The cost of discovery in class action securities litigation is extraordinarily high, in both dollars and business resources, with coercive settlements being a likely result. Moreover, discovery costs in securities litigation are highly asymmetrical, and are borne largely by defendants. *See* Hillary A. Sale, *Heightened Pleading and Discovery Stays: An Analysis of the Effect of the PSLRA's Internal Information Standard on '33 and '34 Act Claims*, 76 Wash. U. L.Q. 537, 582 (1998) ("Despite their voluminous discovery requests to defendants, plaintiffs have very little to offer in the form of reciprocal discovery. . . . [I]n the average securities case, the plaintiffs' document production consists solely of trading slips . . . ."). In short, Congress recognized that "[t]he cost of discovery often forces innocent parties to settle frivolous securities class actions," and sought to protect defendants from these abusive practices. *SG Cowen Sec. Corp. v. U.S. Dist. Ct.*, 189 F.3d 909, 911 (9th Cir. 1999) (citing H.R. Conf. Rep. No. 104-369, 104th Cong. 1st Sess. (1995), *reprinted in* 1995 U.S.C.C.A.N. Sess. 731, 736).

The Court should not allow such an abuse to occur here. It would defy the purposes of the Reform Act to allow Plaintiff to continue with far-ranging, costly, and highly burdensome discovery before the Court has properly evaluated what is a facially deficient Complaint.

**C.    The Order Assumes That The Complaint Adequately Alleges A Material Decline In End-User Demand**

The Order is premised on the conclusory allegation that end-user demand for Fusilev was declining during the class period. (Order *passim*.) Yet, nowhere does the Complaint allege particularized factual allegations of a material decline in end-user demand for Fusilev at the time of Defendants' statements. (Compl. *passim*.) The Complaint does not allege the magnitude, duration, or the timing of any such decline, much less such particularized facts

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

7

regarding a decline of sufficient scope and timing to render Defendants' literally true statements misleading.  (*Id.*; *see also* Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (a plaintiff must plead facts as to the "who, what, when, where, and how" of the alleged fraud).)

For example, the Complaint alleges that Spectrum tracked clinic sales by paying fees to distributors for data, and that Spectrum tracked hospital sales by purchasing drug distribution data or "DDD" from "from IMS Health."  (Compl. ¶¶ 73-79, 81.)  But the Complaint never alleges what any such report actually said at any given time, or any other facts regarding any supposed decline.  (*Id. passim.*)  Moreover, Plaintiff alleges that DDD data is available for purchase by the public, indicating that any purportedly omitted facts about end-user demand were *known* to the market at the time of the alleged misstatements and, at the very least, to Plaintiff when he filed the Complaint.  (*Id.* at ¶ 81; Mot. 22-23; Reply 10 & n.5; Plaintiff's Opposition to Defendants' Motion to Dismiss at 36 n.19).  Yet, curiously, the Complaint is silent as to what DDD actually states.  (Compl. *passim*.)  In any event, without any *factual* allegations about the contents of DDD, the Complaint fails.  *See Ronconi v. Larkin*, 253 F.3d 423, 431 (9th Cir. 2001) (holding that falsity was not plausibly alleged because the conclusory allegation that sales were not accelerating was not supported with specific facts such as a chart or graph showing that sales actually did); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 984-85 (9th Cir. 1999) (rejecting allegations that internal Stop Ship and Flash reports discussed "weak North American sales" for failure to allege with particularity the content of reports) (internal citations omitted.)

As another example, the Complaint offers vague and conclusory statements attributed to two CWs, CW2 and CW12, who conflate their supposed lack of commissions in limited geographic areas with a supposed decline in national end-user demand.  CW2 is alleged to have been a *regional* sales specialist for the Chicago area and employed by Inventive, not Spectrum.  (Compl. ¶ 49.)  CW12 is alleged to have been a *regional* sales specialist for Tennessee and employed by Inventive, not Spectrum.  (*Id.* at ¶ 89.)  They purportedly claim that they stopped

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

8

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  receiving sales commissions in the latter half of 2012 (*Id.* at ¶¶ 96, 98), but Plaintiff fails to

2  establish a connection between any purported regional failure to earn commissions and a

3  nation-wide decline in end-user demand, or even to distinguish the failure to earn commissions

4  from a failure to meet internal targets, a change in the compensation scheme, a reduction in

5  sales to a particular customer or particular region, or some other cause.  *See In re Tibco*

6  *Software Sec. Litig.,* No. C 05-2146 SBA, 2006 U.S. Dist. LEXIS 36666, at *64 (N.D. Cal.

7  May 25, 2006) (citing *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 148 (3d Cir.

8  2004) (finding allegations unreliable where "[p]laintiffs heavily rely on former employees who

9  worked in Chubb's local branch offices for information concerning" company-wide decisions

10  made by senior management); *In re Bus. Objects S.A. Sec. Litig.*, No. C 04-2401 MJJ, 2005

11  U.S. Dist. LEXIS 20215, at *18 (N.D. Cal. July 27, 2005) (witnesses' conclusory allegations

12  regarding company problems lacked detail necessary to show that the witness is a credible

13  source for the allegation).

14         None of these broad allegations contains particularized facts showing a material decline

15  in end-user demand.

16     **D.     The Order Misapplies The Core Operations Inference And Ninth Circuit**

17            **Law On Stock Sales To Find The Complaint Adequately Alleges Scienter.**

18         The Order bases its finding of scienter not on any direct allegations of scienter on the

19  part of any Individual Defendant but instead through the use of two inferential devices:  the

20  core operations inference and Dr. Shrotriya's stock sales during the class period.  (Order 7.)

21  The Order, however, misapplies both inferential devices.  The Order also does not differentiate

22  between Individual Defendants and does not weigh competing, non-culpable inferences.

23         The Order seeks an inference that the Individual Defendants knew end-user demand

24  was declining because they allegedly closely monitored end-user demand.  (*Id.* at 7.)  But

25  Individual Defendants' supposed monitoring is irrelevant if the monitored data did not reflect a

26  material decrease in demand at a relevant time.  The core operations inference is an exception

27  to the general rule that "corporate management's general awareness of the day-to-day workings

28

9

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

of the company's business does *not* establish scienter" absent allegations of "specific information *conveyed* to management *and* related to the fraud."  *South Ferry LP v. Killinger*, 542 F.3d 776, 784-85 (9th Cir. 2008) (citation omitted) (emphasis added).  But the specific facts supposedly constituting core information must be alleged with particularity, and that has not been done here.

As *South Ferry* explained, some facts are so central to a company's "core operations" that it is appropriate to infer that its executives would have known them, and thus that any misstatements made about them were intentional.  *Id.* at 784-86.  But, again, the facts themselves must be alleged.  Here, the Order holds that:

> The plaintiff has alleged facts showing the importance of Fusilev sales to Spectrum's business; that the defendants knew the impact of the return of generic leucovorin supplies on Fusilev end user demand was of concern to investors; ***that the defendants had access to sources of information allowing them to ascertain that the Fusilev end user demand was declining as generic leucovorin became more readily available; and that the actual, and negative impact, was noticed by Spectrum employees***.

(Order 7 (emphasis added).)  The problem here is that the core facts supposedly known to the Defendants—facts showing that end-user demand was declining at some material amount or rate during the class period—are not alleged and established in the Complaint.  (Compl. *passim*; Mot. 16-23, 31-34; Reply 9-11, 15-17.)  The Complaint contains no facts regarding what any of the monitored data said at any given time, and the core operations inference does nothing to fill that void.  (Compl. *passim*; Mot. 16-23, 31-34; Reply 9-11, 15-17.)  As *South Ferry* explained, the core operations inference is appropriate "in rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter."  *South Ferry*, 542 F.3d at 786.  That is not the case here.

In Ninth Circuit cases where the core operations inference is applied, the executives admitted that they monitored databases *that contained specific data that was inconsistent with their public claims.  See Reese v. Malone,* 747 F.3d 557, 572 (9th Cir. 2014); *Nursing Home*

10

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

*Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1231-32 (9th Cir. 2004). *Nursing Home* made clear that without "hard numbers or other specific information" the core operation inference cannot apply. *Id.* at 1231 ("Plaintiffs here have hard numbers and make specific allegations regarding large portions of Oracle's sales data."); *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062-63 (9th Cir. 2014) (no core operations inference of scienter because "[m]issing are allegations linking specific reports and their contents to the executives" and "there are no allegations regarding discussions of the reports' contents").)  Here, the core operations inference has no application because there are no alleged core facts that Spectrum misrepresented or failed to disclose.

Without a viable core-operations inference, the Order also cannot rely solely on supposed stock sales for scienter.  It has long been understood that stock sales are "not *alone* sufficient to raise a strong inference of fraud." *In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 768 (N.D. Cal. 1997) (emphasis added).  "Although viable circumstantial evidence of scienter, stock sales alone cannot create a strong inference of scienter." *Splash Tech.,* 160 F. Supp. 2d at 1081 (internal citations and quotation marks omitted).  Moreover, the Complaint contains no allegations that Mr. Keller or Mr. Scott traded in Spectrum's stock during the Class Period.  (Compl. *passim*; Mot. 40; Reply 19.)  As to Dr. Shrotriya, the Order states that "Shrotriya's sale of stocks during the Class Period (in contrast to his lack of transactions in comparable periods before and after) also raise an inference of scienter."  (Order 7.)  But the Order does not address that Dr. Shrotriya sold a small percentage of his holdings—12.7%. (Mot. 37-38 & n.8; Reply 19.)  As a matter of law, this, along with the lack of trades by the other Individual Defendants, fails to support an inference of scienter.  (Mot. 37-38, 40; *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) (sale of 37% of holdings insufficient for scienter because "[w]e typically require larger sales amounts—and corroborative sales by other defendants—to allow insider trading to support scienter").)

That inference also is in error because, as the Order does not recognize, most of Dr. Shrotriya's stock sales were pursuant to pre-established 10b5-1 plans.  (Mot. 38; Reply 19.)

11

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   Rule 10b5-1 trading plans actually weigh *against* an inference of scienter.  *See, e.g.*, *Metzler*,

2   540 F.3d at 1067 n.11 ("Sales according to predetermined plans may rebut an inference of

3   scienter."); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1059,

4   1069 (N.D. Cal. 2012).

5          Moreover, even if the Court believed that Dr. Shrotriya's stock sales were sufficient for

6   scienter purposes, the Order fails to dismiss the claims against Defendants Mr. Keller and Mr.

7   Scott, who are not alleged to have traded.  (Compl. *passim*.)  This is clear error.  Scienter must

8   be alleged as to each defendant separately, not as to all defendants as a group.  *See Apollo Grp.*,

9   774 F.3d at 607 (*citing Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 743-44 (9th Cir.

10  2008); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014).  Indeed, the lack

11  of sales actually serves to rebut an inference of scienter as to all Defendants, and Mr. Keller

12  and Mr. Scott in particular.

13         Finally, the Order does not weigh competing, non-culpable inferences.  *See Tellabs,*

14  *Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  Indeed, without any *factual*

15  allegations of a material decline in end-user demand, there was no culpable inference for the

16  Court to weigh non-culpable inferences against.  Regardless, the Order does not address the

17  competing inference that during the class period Defendants stated their honestly held beliefs

18  regarding Fusilev's sales prospects based on the data available to them at that time, and, once

19  they heard from distributors in March 2013 that the distributors would be changing their

20  ordering patterns, Defendants promptly disclosed this information.

21    **E.      The Order Does Not Apply The Correct Legal Standards To The**

22              **Complaint's Loss Causation Allegations**

23         The Order does not evaluate the Complaint's loss causation allegations under the

24  correct legal standards.  In the Ninth Circuit, a plaintiff must plead loss causation with

25  particularity consistent with Rule 9.  *Apollo Grp.*, 774 F.3d at 605.  In addition, Plaintiff must

26  "allege that the decline in the defendant's stock price was *proximately caused* by a revelation

27  of fraudulent activity rather than by changing market conditions, changing investor

28

12

expectations, or other unrelated factors." *Loos v. Immersion Corp.,* No. 12-15100, 2014 U.S.
App. LEXIS 17813, at *13 (9th Cir. Sep. 11, 2014) (citing *Metzler*, 540 F.3d at 1062)
(emphasis added). "In other words, the plaintiff must plausibly allege that the defendant's
fraud was 'revealed to the market and caused the resulting losses.'" *Loos*, 2014 U.S. App.
LEXIS 17813, at *13-14 (quoting *Metzler,* 540 F.3d at 1063). The Order does not apply
these standards.

Instead, the Order reasons as follows:

> The loss event is clearly identified as the significant drop in stock price
> immediately following the defendants' March 12, 2013, announcement that
> Fusilev sales would drop significantly in response to the 'recent stabilization' (ie,
> increased availability) of the generic leucovorin market. This event occurred
> subsequent to defendants' conduct and representations to mislead investors over
> the prior months that end-user demand for Fusilev was not and would not decline
> with increasing availability of generic leucovorin.

(Order 7-8.) The Order imputes causation between events merely because one event came
after another; that is, the Order explicitly finds that the Complaint adequately alleges loss
causation because the alleged stock drop "occurred subsequent to defendants' alleged
conduct and misrepresentations." (*Id.*)

This *post hoc ergo propter hoc* reasoning has long been rejected as erroneous. It
wrongly assumes a causal relationship from mere chronological order. If this were the
standard then it would gut the loss causation pleading requirement because every purported
securities class action complaint is, at a minimum, premised on such a sequence of events.
The Ninth Circuit instead requires far more than a simple temporal sequence to properly
plead loss causation: it requires a finding that the Complaint adequately alleges particularized
facts showing that the stock drop was proximately caused by disclosure of some supposed
fraud. *See Loos*, 2014 U.S. App. LEXIS 17813, at *13-14.

Here, the Complaint alleges that the March 12, 2013 announcement disclosed a
change in Spectrum's 2013 forward guidance from prior guidance based on recent
communications with distributors regarding their ordering patterns. (Compl. ¶ 159.) The

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

13

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   Complaint contains no factual allegations challenging the veracity of this disclosure, *i.e.*, that

2   Spectrum's change in guidance was not based on recent communications.  (*Id. passim*; Mot.

3   42; Reply 22.)  Nor does the Order address the fact that the disclosure says nothing about

4   end-user demand.  (Compl. ¶ 159; Mot. 42; Reply 22.)  The disclosure speaks to distributor

5   ordering patterns, not purchasing by end users.  (Compl. ¶ 159.)  The Order also does not

6   address that the disclosure says nothing about bulk discounts or channel stuffing.  (*Id.* ¶ 159;

7   Mot. 42; Reply 22.)

8         On its face, the March 12, 2013 announcement reveals that, based on new input from

9   third-party distributors, Spectrum did not think it would meet its 2013 revenue goals,

10  resulting in an adverse market reaction.  That disclosure does not reveal any fraud, and the

11  Complaint does nothing to establish a causal link between the adverse market reaction and

12  any alleged fraud.  *See Metzler*, 540 F.3d at 1063 (a securities fraud plaintiff must allege that

13  the market "learned of and reacted to th[e] fraud, as opposed to merely reacting to reports of

14  the defendant's poor financial health generally"); *In re Oracle Corp. Sec. Litig.*, 627 F.3d

15  376, 392, 394 (9th Cir. 2010) (holding that an earnings miss, standing alone, is insufficient to

16  establish loss causation).

17        The Complaint fails to allege facts indicating that the market interpreted the

18  Company's March 12, 2013 announcement as disclosing previously omitted information or

19  any other alleged species of fraud.  Indeed, the facts alleged in the Complaint indicate that

20  the March 12, 2013 announcement was perceived by the market as a *timely* disclosure of

21  recently discovered information relating to wholesale orders, not some previously omitted

22  decline in end-user demand.  For example, the Complaint alleges that a March 12, 2013

23  Credit Suisse report stated that "the current disclosure was *timely*" and that "[w]holesaler

24  purchasing caused the shortfall.  *SPPI reported that wholesale distributors did not reorder in*

25  *Q1,* resulting in the substantial drop in sales."  (Compl. ¶ 161. (emphasis added).)  Thus, the

26  facts in the Complaint affirmatively establish that the March 12, 2012 announcement was

27  understood by investors not as revealing any prior fraud but as a timely update regarding a

28

14

1    recent change in distributor orders.  (Mot. 42; Reply 23.)

2    **F.    The Order Misapplies The Reform Act's Safe Harbor Provision So As**

3    **Not To Protect Defendants' Forward-Looking Statements**

4         The Order recognizes that Defendants' allegedly false statements were forward looking

5    and accompanied by cautionary language.  Nonetheless, the Order finds the cautionary

6    language was not meaningful because "plaintiff's underlying allegation is that the defendants

7    ***knew*** that end-user demand was declining in response to the increased availability of generic

8    leucovorin**,**" and thus Defendants' "[c]autionary language . . . fail[ed] to reflect current adverse

9    events known to the speaker."  (Order 5-6 (emphasis added).)  There are two fundamental

10   errors with this reasoning: an error of fact and an error of law.

11        *First*, nowhere does the Complaint adequately allege the "fact" that there was a material

12   decline in end-user demand at any relevant time, let alone one known to each Defendant.

13   (Compl. *passim*; Mot. 16-23, 31-34; Reply 9-11, 15-17.)  Thus, even under the Order's

14   standard, there are no allegations showing that Defendants' "[c]autionary language . . . *fail[ed]*

15   *to reflect current adverse events known to the speaker*."  (Order 5-6 (emphasis added).)

16        *Second*, even if Plaintiff had adequately alleged such a "fact" and each Defendant's

17   knowledge of that "fact," it would not defeat application of the safe harbor.  "[I]f a forward-

18   looking statement is identified as such and accompanied by meaningful cautionary statements*,*

19   then ***the state of mind of the individual making the statement is irrelevant, and the statement***

20   ***is not actionable regardless of the plaintiff's showing of scienter***."  *In re Cutera Sec. Litig.*,

21   610 F.3d 1103, 1112 (9th Cir. 2010) (emphasis added).

22        The Order cites this exact language but then misapplies it by stating "[c]autionary

23   language identifying potential adverse events is not meaningful when it conflicts with or fails

24   to reflect current adverse events ***known*** to the speaker."  (Order 5-6 (emphasis added).)  This

25   reasoning runs directly contrary to the holding of *Cutera*.  *Cutera*, 610 F.3d at 1112.  Applying

26   such a standard to the cautionary language requires the Court to inquire into the speaker's state

27   of mind—the very thing *Cutera* forecloses *because* ***the speaker's state of mind is irrelevant***.

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

15

*In re ECOtality, Inc. Sec. Litig.*, No 13-03791-SC, 2014 U.S. Dist. LEXIS 130499, at *23-27 (N.D. Cal. Sep. 16, 2014).

### G.   The Order Does Not Consider That Defendants' Statements Are Inactionable Puffery

The Order does not recognize that many of Defendants' alleged statements are protected statements of corporate optimism under the mere puffery doctrine.  (Order *passim*; Mot. 15; Reply 7-9.)  Under Ninth Circuit precedent, "'professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives.'" *Cutera*, 610 F.3d at 1111 (quoting *In re VeriFone Sec. Litig.*, 784 F. Supp. 1471, 1481 (N.D. Cal. 1992)).  As a result, it is well established that "vague, generalized assertions of corporate optimism or statements of 'mere puffing' are not actionable material misrepresentations under federal securities laws."  *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008) (collecting cases).

The representative statements cited in the Motion to Dismiss are obviously vague statements of corporate optimism and are inactionable as mere puffery.  (Mot. 15; Reply 7-9.) For example, the following purportedly actionable statement in the Complaint:

> *The question is always asked, can FUSILEV continue to grow?   Our absolute answer is absolutely yes.*

(*Id.* at ¶ 151 (emphasis in Compl.).)  Such statements are not actionable.  *See, e.g., In re Downey Sec. Litig.*, No. CV 08-3261-JFW (RZx), 2009 U.S. Dist. LEXIS 25007, at *16 (C.D. Cal. Mar. 18, 2009) (statements "of hope, opinion, or belief" about "future performance or general market conditions" are not actionable); *In re Splash Tech. Holdings, Inc., Sec. Litig.*, 160 F. Supp. 2d 1059, 1076 (N.D. Cal. 2001) (holding that the "defining question is . . . whether the statement is so 'exaggerated' or 'vague' that no reasonable investor would rely on it when considering the total mix of available information"); *In re Leapfrog Enters, Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1050 (N.D. Cal. 2007) (vague and amorphous statements such as "This is going to be a very big second half for us" held inactionable under § 10(b)).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

16

**IV.    CONCLUSION**

For the reasons stated herein, Defendants respectfully request that the Court reconsider its denial of Defendants' Motion to Dismiss and upon reconsideration dismiss the Complaint with prejudice.  Additionally, we respectfully request oral argument to address the Court's questions and the issues raised in this Motion.

DATED: April 10, 2015                            BROWNSTEIN HYATT FARBER
                                                 SCHRECK, LLP


                                                 By:  /s/ Jeffrey S. Rugg
                                                     Kirk B. Lenhard (Nevada Bar No. 1437)
                                                     Jeffrey S. Rugg (Nevada Bar No. 10978)
                                                     100 North City Parkway, Suite 1600
                                                     Las Vegas, NV 89106-4614
                                                     Telephone:  (702) 382-2101
                                                     Facsimile:  (702) 382-8135

                                                     STRADLING YOCCA CARLSON &
                                                     RAUTH, P.C.
                                                     John F. Cannon (admitted *pro hac vice*)
                                                     Jason de Bretteville (admitted *pro hac vice*)
                                                     Aaron C. Humes (admitted *pro hac vice*)
                                                     660 Newport Center Drive Suite 1600
                                                     Newport Beach, CA 92660
                                                     Telephone:  (949) 725-4000
                                                     Facsimile:  (949) 725-4100

                                                     *Attorneys for Defendants*
                                                     *SPECTRUM PHARMACEUTICALS, INC.,*
                                                     *RAJESH C. SHROTRIYA, JOSEPH KENNETH*
                                                     *KELLER, and BRETT L. SCOTT*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

17

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on April 10, 2015, I electronically filed the foregoing Defendants'

3   Motion for Reconsideration of the Court's March 26, 2015 Order and Memorandum of Points

4   and Authorities in Support Thereof with the Clerk of the Court using the CM/ECF system,

5   which will send notification of such filing to the following counsel of record:

6

7          LABATON SUCHAROW LLP
           Jonathan Gardner
8          Mark S. Goldman
           Angelina Nguyen
9          140 Broadway
           New York, New York 10005
10         Telephone: (212) 907-0700
           Facsimile: (212) 818-0477
11
12         *Attorneys for Lead Plaintiff*

13         THE O'MARA LAW FIRM, P.C.
           William M. O'Mara
14         David C. O'Mara
           311 E. Liberty St.
15         Reno, Nevada 89501
           Telephone: (775) 323-1321
16         Facsimile: (775) 323-4082
17
           *Attorneys for Lead Plaintiff*
18
19                    *By: /s/ Karen Mandall*
                      an Employee of Brownstein Hyatt Farber Schreck, LLP
20
21
22
23
24
25
26
27
28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101